UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------
EULALIA SABIO DE CORDOVA,

                Plaintiff,

          v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
---------------------------------------------------------------

NOT FOR PUBLICATION

**MEMORANDUM & ORDER**
20-CV-3248 (MKB)

MARGO K. BRODIE, United States District Judge:

    Plaintiff Eulalia Sabio De Cordova, proceeding *pro se,* commenced the above-captioned action on August 10, 2020, against the Commissioner of Social Security (the "Commissioner"). (Compl., Docket Entry No. 1.) Plaintiff seeks review of a final decision of the Commissioner denying Plaintiff's claim for Social Security disability insurance benefits under the Social Security Act (the "SSA"), pursuant to 42 U.S.C. § 405(g). (Compl. 1.) The Commissioner moves for judgment on the pleadings. (Comm'r Mot. for J. on the Pleadings ("Comm'r Mot."), Docket Entry No. 15; Comm'r Mem. in Supp. of Comm'r Mot. ("Comm'r Mem."), annexed to Comm'r Mot., Docket Entry No. 15-1.) Plaintiff did not respond to the Commissioner's motion.

    For the reasons set forth below, the Court grants the Commissioner's motion for judgment on the pleadings.

    **I.**    **Background**

    Plaintiff is a fifty-eight-year-old woman with a high school degree. (Certified Admin R. ("R.") 44, 70, Docket Entry No. 10.) Plaintiff worked as an office cleaner and bus monitor/attendant but stopped working after she suffered a stroke on March 24, 2017. (R. 50.) On April 24, 2017, Plaintiff filed a claim for Title II disability benefits due to the stroke,

shoulder pain, and high blood pressure with an alleged disability onset date of March 24, 2017. (R. 69, 303.) The Social Security Administration initially denied Plaintiff's claim on June 28, 2017. (R. 101.) Plaintiff requested a hearing before an ALJ, (R. 108), which was initially scheduled for May 10, 2019, but was rescheduled to September 18, 2019, for Plaintiff to obtain representation, (R. 66). At the hearing on September 18, 2019, Plaintiff was represented by her attorney. (R. 36–61.) By decision dated October 1, 2019, the ALJ determined Plaintiff was not disabled from March 24, 2017, the alleged onset date, through the date of the decision. (R. 13–33.) On July 17, 2020, the Social Security Administration Appeals Council denied Plaintiff's request for review rendering the ALJ's decision final. (R. 1–4.) Plaintiff filed a timely appeal with the Court. (Compl.)

    a. **Hearing before the ALJ**

On September 18, 2019, the ALJ heard testimony from Plaintiff and vocational expert Larry Tackey. (R. 36–61.)

        i. **Plaintiff's testimony**

Plaintiff lived with her husband and daughter. (R. 42–43.) Plaintiff worked as an office cleaner and a bus attendant. (R. 47–49.) On March 24, 2017, Plaintiff suffered a stroke. (R. 50.) Plaintiff was treated first at Woodhull Hospital and then Bellevue Hospital, spending four days at the hospital. (R. 50–51.) As a result of the stroke, Plaintiff has had poor balance and continues to suffer from headaches. (R. 51.) Plaintiff feels pain in her right leg and suffered from shoulder pain and back aches. (R. 51.) She sees Dr. Antoliy Vilnits every month for pain and the doctor has referred her for therapy for her leg and shoulders. (R. 52.) There has been no improvement since Plaintiff stopped working and her impairments affect her ability to stand. (R. 52.) Plaintiff can stand for about half an hour before she must sit down because her legs and feet

hurt. (R. 53.) She has trouble walking and can walk about half a block to one block before she must pause because her legs hurt. (R. 53.) Plaintiff receives help from her daughter with grocery shopping, cooking, and cleaning. (R. 53–54.) Plaintiff tried to take walks every day but only walks a block. (R. 54.) Plaintiff can shower and dress herself but needs assistance putting on a coat due to her shoulder pain. (R. 55.) Plaintiff attends church twice a week and spends time reading the Bible and watching television. (R. 56.)

### ii. Larry Tackey, vocational expert

The vocational expert ("VE") classified Plaintiff's past employment as that of an office cleaner and bus monitor. (R. 57.) Based on a hypothetical posed by the ALJ, the VE testified that an individual of Plaintiff's age, education, past work experience, the ability to perform medium work with limitations to occasionally push and pull with bilateral upper extremities and only occasionally overhead reach with the left upper extremity and infrequently balance, stoop, kneel, crouch, and crawl, could perform her past work as an office cleaner and bus monitor both as actually and generally performed. (R. 57–58.) The VE also testified that there are other jobs in the national economy for someone with those abilities, including hand packer, industrial cleaner, and dining room attendant. (R. 58.) The ALJ changed the limitations from the first hypothetical posed so that the individual could only perform light work, and the VE opined that an individual could not work as an office cleaner but could perform the past work as a bus attendant as generally performed but not as Plaintiff performed the work. (R. 59.) The VE further testified based on another hypothetical posed by the ALJ that if the same individual could only perform sedentary work but occasionally or frequently lift ten pounds and stand or walk two

3

hours in an eight-hour day and sit for six hours in an eight-hour day, could not perform the past work.  (R. 59–60.)

        **b.**    **The ALJ's decision**

The ALJ conducted the five-step sequential analysis as required by the SSA.[1]  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 24, 2017, the alleged onset date.  (R. 21.)  The ALJ noted that Plaintiff had received disability payments as earnings from her employer in the first three quarters of 2017.  (R. 21.)  At step two, the ALJ found that Plaintiff had severe impairments of obesity, hypertension, osteoarthritis of the thoracic spine, degenerative joint disease and partial tear, bilateral shoulders.  (R. 21.)  The ALJ also considered Plaintiff's other impairments of hemorrhagic stroke, anemia, varicose veins, ples planus and plantar fasciitis both singularly and in combination, and determined that they do not significantly limit Plaintiff's ability to perform basic work functions, and were considered non-severe.  (R. 21.)  At step three, the ALJ found that Plaintiff's impairments do not meet or

---

[1] The five-step sequential process outlined by the SSA considers:
> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*Demars v. Comm'r of Soc. Sec.*, 841 F. App'x 258, 260–61 (2d Cir. 2021) (quoting *Estrella v. Berryhill*, 925 F.3d 90, 94 (2d Cir. 2019)).

medically equal the severity of any of the listed impairments, looking specifically at Listings 1.02 and 1.04. (R. 23.)

At step four, the ALJ concluded that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), "except that she can occasionally push/pull with the bilateral upper extremities; occasionally reach over head with the left upper extremity; [and] frequently balance, stoop, kneel, crouch and crawl." (R. 23–24.) The ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. 25.) In reaching this conclusion, the ALJ considered the evidence and determined that "the record simply does not support [Plaintiff's] allegations of a limited ability to stand and walk. Such evidence supports the light residual functional capacity for light work with frequent balancing, stooping, kneeling, crouching and crawling." (R. 26.)

Based on the RFC determination, the ALJ found that Plaintiff could perform her past work as a bus monitor as it is generally performed. (R. 27.) The ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, any time from March 24, 2017, through the date of the decision. (R. 27.)

## II. Discussion

### a. Standard of review

"In reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004), *as amended on reh'g in part*, 416 F.3d 101 (2d Cir. 2005); *see also Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (per

5

curiam). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sczepanski v. Saul*, 946 F.3d 152, 157 (2d Cir. 2020) (quoting *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)); *see also Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (per curiam) (same); *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) (same). Once an ALJ finds facts, the court "can reject those facts only if a reasonable factfinder would have to conclude otherwise." *Talyosef v. Saul*, 848 F. App'x 47, 48 (2d Cir. 2021) (quoting *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012)). In deciding whether substantial evidence exists, the court will "defer to the Commissioner's resolution of conflicting evidence." *Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (quoting *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012)). If, however, the Commissioner's decision is not supported by substantial evidence or is based on legal error, a court may set aside the Commissioner's decision. *See Ewen v. Saul*, No. 19-CV-9394, 2021 WL 1143288, at *11 (S.D.N.Y. Mar. 23, 2021) (citing *Moran*, 569 F.3d at 112); *see also Prince v. Astrue*, 514 F. App'x 18, 19–20 (2d Cir. 2013) (first citing 42 U.S.C. § 405(g); then citing *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). "In making such determinations, courts should be mindful that '[t]he Social Security Act is a remedial statute which must be 'liberally applied'; its intent is inclusion rather than exclusion.'" *McCall v. Astrue*, No. 05-CV-2042, 2008 WL 5378121, at *8 (S.D.N.Y. Dec. 23, 2008) (alteration in original) (quoting *Rivera v. Schweiker*, 717 F.2d 719, 723 (2d Cir. 1983)).

### b. The ALJ's decision is supported by substantial evidence

In the Complaint, Plaintiff contends that the ALJ's decision is contrary to the law and not supported by substantial evidence. (Compl. 2.)

The Commissioner argues that the ALJ's five step analysis is supported by substantial evidence and free of legal error. (Comm'r Mem. 18.)

### i. Severe Impairments

In the second step of the five-step analysis, the ALJ must determine whether a claimant has a severe impairment or a combination of impairments. An impairment is considered "severe" if it significantly limits an individual's physical or mental abilities to do basic work activities and persists for at least twelve months. SSR 96-3p, 1996 WL 374181, at *1 (S.S.A. July 2, 1996); 20 C.F.R. § 404.1520(c); *see also Cardoza v. Comm'r of Soc. Sec.*, 353 F. Supp. 3d 267, 279–80 (S.D.N.Y. 2019). Basic work functions are related to an individual's ability and aptitude to perform most jobs such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling . . . seeing, hearing, and speaking . . . [u]nderstanding, carrying out and remembering simple instructions . . . [u]se of judgment . . . [r]esponding appropriately to supervision, co-workers and usual work situations." *Cardoza*, 353 F. Supp. 3d at 279–80 (citing *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012)); 20 C.F.R. § 404.1522(b); *George A. v. Comm'r of Soc. Sec.*, No. 20-CV-00691, 2021 WL 2102527, at *5 (W.D.N.Y. May 25, 2021). A severe impairment must persist for at least twelve months. *See* 42 U.S.C. § 423(d)(1)(A) (Disability involves impairment "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."). An impairment is considered "not severe" if it only has a minimal effect on an individual's ability to perform basic work functions. SSR 96-3p, 1996 WL 374181, at *1; *accord Bowen v. Yuckert*, 482 U.S. 137,

7

154 n.12 (1987).  The "mere presence" of a disease or impairment or a diagnosis on its own is not sufficient to make the condition severe.  *Bourdier v. Saul*, No. 19-CV-205, 2020 WL 705211, at *6 (E.D.N.Y. Feb. 12, 2020) (first citing *Taylor*, 32 F. Supp. 3d at 265; then citing *Coleman v. Shalala*, 895 F. Supp. 50, 53 (S.D.N.Y. 1995)).  The burden is on the plaintiff to establish that any impairment they allege is severe.  *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995).

The ALJ's determination that Plaintiff had partial tear in bilateral shoulders, (R. 21), while an error, is harmless, as the evidence indicated that Plaintiff had osteoarthritis and pain in both shoulders.  The June 24, 2016 MRI of Plaintiff's right shoulder indicated moderate diffuse rotator cuff tendinosis, marked degenerative change at the acromioclavicular joint, moderate AC joint impingement and a posterior labral tear.  (R. 391.)  While a May 30, 2017 x-ray of Plaintiff's left shoulder showed well maintained joint spaces and no acute fractures, dislocation or destructive bony lesions, (R. 437), other evidence indicates that Plaintiff suffered from osteoarthritis and pain in both shoulders and specifically sought physical therapy treatment for osteoarthritis in her left shoulder, (R. 358–61, 371, 384, 394, 406, 420–22, 430–32, 435, 445–47, 451–55, 463–65, 467–69, 515–17, 519–22, 524–27, 530–33, 534, 537, 541–55, 564-68, 570–72, 587).  Therefore, the ALJ's finding that Plaintiff had a partial tear in the bilateral shoulders is harmless as it does not affect the ALJ's overall disability determination.  The evidence indicates that Plaintiff still had an impairment in the left shoulder even if it may have been less severe than what the ALJ attributed to Plaintiff.  *See Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (finding that where evidence overlooked by the ALJ was not "significantly more favorable to [the Plaintiff]," there was "no reasonable likelihood it would have changed the ALJ's determination that [Plaintiff] was not disabled").

8

Further, the remainder of the ALJ's step two analysis was supported by substantial evidence. The ALJ found that Plaintiff suffered from the severe impairments of obesity, hypertension, osteoarthritis of the thoracic spine, and degenerative joint disease and partial tear of the bilateral shoulders. (R. 21.) The finding that these are all severe impairments is supported by the medical evidence. Plaintiff has documented diagnosis of hypertension and obesity since prior to her stroke, and Plaintiff's treating physicians, Dr. Anatoliy Vilnits and Dr. Alla Mesh, both indicated that weight loss and management of blood pressure were important for Plaintiff's health. (R. 372–73, 379–82, 384–86, 401–04, 406–08, 420–22, 427–29, 430–32, 446–48, 450–55, 463–65, 467–69, 475, 499, 503, 515–17, 519–22, 524–27, 564–68, 570–73, 574–77, 578–80, 582–85, 587–90.) In addition, imaging studies support the findings of osteoarthritis and a degenerative joint disease and partial tear, (R. 359, 391, 393), and Plaintiff had subjective complaints of upper back and shoulder pain consistently since 2015, (R. 371–72, 379–82, 384–86, 401–04, 406–08, 420–22, 427–29, 430–32, 446–48, 450–55, 463–65, 467–69, 515–17, 519–22, 524–27, 564–68, 570–73, 574–77, 578–80, 582–85, 587–90). Moreover, Plaintiff sought physical therapy for her shoulder pain. (R. 551–55.)

The ALJ's determination that Plaintiff's hemorrhagic stroke, anemia, varicose veins, ples planus and plantar fasciitis are non-severe impairments is also supported by substantial evidence. While Plaintiff's stroke was the catalyst of her alleged onset disability, the records from Bellevue Hospital indicate that Plaintiff was treated quickly, managing her blood pressure with medication. (R. 413–14.) *See Mongeur v. Heckler,* 722 F.2d 1033, 1039 (2d Cir. 1983) (holding condition was not severe impairment where it improved from treatment). Plaintiff was discharged after only three days in the hospital with clearance from physical and occupational therapists. (R. 415.) A full examination prior to discharge indicated a normal physical and

9

neurological examinations, her cranial nerves were intact, motor skills, reflexes and coordination were normal, and Plaintiff had a normal gait. (R. 416.) Plaintiff was assessed for any disabilities due to the stroke and it was determined that while she had minor symptoms, she would be able to perform all activities of daily living independently. (R. 416–17.) Plaintiff was discharged with the recommendation to maintain her blood pressure.[2] (R. 414–17.) In a follow up visit with Dr. Vilnits several days after her release from the hospital, Plaintiff reported that she felt off balance but did not indicate any dizziness, weakness in her extremities or note any need for assistance with daily activities. Her neurological and physical examinations were both normal. (R. 420–21.) In addition, in follow up visits with Dr. Vilnits after her stroke, Plaintiff did not report symptoms of dizziness or weakness, or difficulty walking long distances or need for an assistive device, and Dr. Vilnits did not remark on any symptoms or issues that persisted after Plaintiff's stroke that would have limited her functional abilities. In his medical source statement Dr. Vilnits noted that Plaintiff did not have any postural limitations and could frequently climb, balance, kneel, crouch, crawl, and stoop. (R. 557.) Dr. Mesh also remarked on Plaintiff's balance issues, noting she was unsteady and unable to walk on toes and heels or perform a tandem walk, but recommended physical therapy to improve her balance. (R. 475, 499–500, 503–04.) Plaintiff also reported to Dr. Vinod Thukral during her consultative examination on May 26, 2017, that her weakness had improved, and she did not require physical therapy. (R. 433.) Plaintiff had difficulty finding a physical therapist but when she did find one in January of 2019, she only sought treatment for her shoulder pain and not her balance. (R. 551–55.) Thus, there is substantial evidence in the record that any impairments from the stroke were minimal,

---

[2] Less than two weeks prior to the onset of her stroke, Dr. John Nobile noted that Plaintiff had not been compliant with her hypertension medication. (R. 411.)

10

improved with medication, did not last more than twelve months, and do not impede Plaintiff's ability to perform basic work functions.

The ALJ also determined that Plaintiff's diagnosed anemia, varicose veins, ples plenus and plantar fasciitis were non-severe impairments. (R. 21.) Plaintiff's impairments of varicose veins and anemia have persisted for more than twelve months and were present prior to the onset of her stroke. Dr. Vilnits records indicate that Plaintiff was prescribed vitamins for her anemia, (R. 353, 356), and that she had some leg swelling due to her varicose veins, (R. 384–85), but Plaintiff never indicated any edema in her lower extremities, dizziness, lightheadedness, or weakness or any functional limitations due to these diagnoses.

Lastly, Plaintiff's pes planus and plantar fasciitis condition was diagnosed after she complained of foot pain on April 19, 2019, and an MRI was conducted on May 17, 2019. (R. 578–80, 561.) In December of 2018, Plaintiffs' foot was ex-rayed and she was diagnosed with mild degenerative arthritis, not ples plenus and plantar fasciitis. (R. 539.) Plaintiff's ples plenus and plantar fasciitis impairments therefore had not persisted for a period of twelve months, as they had been diagnosed two years after her original application and three months before her hearing. The ALJ's determination that Plaintiff's hemorrhagic stroke, anemia, varicose veins, ples planus and plantar fasciitis are non-severe impairments is supported by substantial evidence.

Accordingly, the ALJ's determination in step two was supported by substantial evidence.

### ii. Listings

At step three, the ALJ must consider whether any of the severe impairments meets or medically equals one of the impairments in the Listings. The ALJ determined that Plaintiff had severe impairments of obesity, hypertension, osteoarthritis of the thoracic spine, degenerative joint disease and partial tear, bilateral shoulders. (R. 21.) The ALJ focused on Listings 1.02

11

(Major Dysfunction of a Joint) and 1.04 (Disorders of the Spine).  (R. 23.)  To meet the requirements of Listing § 1.02 an individual's impairment must be characterized by "gross anatomical deformity . . . and chronic joint pain and stiffness with signs of limitations of motion or other abnormal motion of the affected joints."  20 C.F.R. Part 404, Subpart P, App'x 1, § 1.02.  Further, the plaintiff must show:

> medically acceptable imaging of joint space narrowing, bony destruction, or ankyloses of the affected joint(s) with
>
> (A) Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively . . . ; or
>
> (B) Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively.

20 C.F.R. Part 404, Subpart P, App'x 1, § 1.02.  Plaintiff did not present medically acceptable imaging of joint space narrowing, bony destruction or ankyloses.  An MRI of the right shoulder showed moderate AC joint impingement but no indication that it affected her fine and gross movements.  (R. 391.)  An x-ray of the left shoulder showed no acute fractures, dislocation or destructive bony lesions and well-maintained joint spaces.  (R. 437.)  Dr. Thukral noted that Plaintiff had full range of motion of her shoulder and full grip strength and was able to write, zip, button and tie with her right hand.  (R. 435.)  Dr. Mesh also noted 5/5 grip strength in the right upper extremity.  (R. 475, 499, 503.)  Therefore, Plaintiff has not met the listing requirements of 1.02.

> To meet the requirements of Listing 1.04 the Plaintiff must show:
>
> > a disorder[] of the spine . . . resulting in compromise of a nerve root . . . or the spinal cord with [one of the following]:
> >
> > (A) Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle

12

>   weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or
>
>   (B) Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or
>
>   (C) Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic non-radicular pain and weakness, and resulting in inability to ambulate effectively.

20 C.F.R. Part 404, Subpart P, App'x 1, § 1.04. Plaintiff's chest x-ray showed osteoarthritis of the thoracic spine but there was no evidence of nerve root compression, spinal arachnoiditis or lumbar spine stenosis. (R. 358, 393.) Thus, Plaintiff does not meet the listing requirements for 1.04 either.

The SSA removed obesity from the Listings in October of 1999. 64 Fed. Reg. 46122 (1999); *see Howe-Andrews v. Astrue*, No. 05-CV-4539, 2007 WL 1839891, at *7 (E.D.N.Y. June 27, 2007). However, under SSR-02-1P, obesity may be considered severe and therefore medically equal to a listed disability if "alone or in combination with another medically determinable physical or mental impairment, it significantly limits an individual's physical or mental ability to do basic work activities." *See* SSR 02-1p, Titles II and XVI: Evaluation of Obesity, 67 Fed. Reg. 57859, 57861-62 (Sept. 12, 2002), 2002 WL 34686281, at *4. Obesity can rise to the level of a listed impairment under certain circumstances such as if it results in an inability to ambulate effectively. 67 Fed. Reg. at 57862; *see* SSR 02-1p; *Dieguez v. Berryhill*, No. 15-CV-2282, 2017 WL 3493255, at *3 (S.D.N.Y. Aug. 15, 2017).

While Plaintiff had subjective complaints of difficulty ambulating, she alleged it was due to her stroke and Plaintiff was diagnosed with obesity prior to the alleged onset date. (R. 353,

13

356, 362, 373, 385, 404, 407.)  Although Plaintiff noted in her function report that she used a cane, (R. 253), Plaintiff did not inform Dr. Vilnits, her long-time provider, that she required any assistive device to ambulate prior to or after her stroke, (R. 347, 420–21, 427, 446–48, 463–65, 515–17, 519–21, 525–26, 530–32, 565–68, 578–80, 582–85, 588–89).  Dr. Mesh, while noting some instability due to the stroke, did not report any need for an assistive device.  (R. 475, 499, 503.)  Dr. Thukral also noted she did not use an assistive device and reported that Plaintiff had a normal gait and could walk on her heels and toes without difficulty.  (R. 434.)

As for Plaintiff's hypertension, the cardiovascular listing requires that an individual's hypertension impairment be evaluated in reference to the specific body system affected such as heart, brain, kidneys, or eyes, as hypertension causes disability through its impact on other body systems.  *See* 20 C.F.R. Part 404, Subpart P, App'x 1, § 4.00(H); *see also Alcantara v. Astrue*, 667 F. Supp. 2d 262, 275 (S.D.N.Y. 2009).  Plaintiff's hypertension affected her brain and resulted in a hemorrhagic stroke.  (R. 414.)  The hospital records indicate that Plaintiff's stroke was managed through controlling her blood pressure.  (R. 413–14.)  Dr. Vilnits and Dr. Mesh both noted that Plaintiff needed to maintain her blood pressure.  (R. 372–73, 379–82, 384–86, 401–04, 406–08, 420–22, 427–29, 430–32, 446–48, 450–55, 463–65, 467–69, 475, 499, 503, 515–17, 519–22, 524–27, 564–68, 570–73, 574–77, 578–80, 582–85, 587–90.)  However, as discussed above, Plaintiff's impairments due to the stroke were non-severe and thus did not create any functional limitations.  *See Mejia v. Astrue*, 719 F. Supp. 2d 328, 341 (S.D.N.Y. 2010) ("During the period in question, there is limited evidence that [claimant's] hypertension restricted his lifestyle.").

Substantial evidence supports the ALJ's determination that Plaintiff's severe impairments did not meet the requirements of the Listings.

14

### iii. RFC

The ALJ determined that Plaintiff has an RFC for light work as defined in 20 C.F.R. § 404.1567(b), "except that she can occasionally push/pull with the bilateral upper extremities; occasionally reach over head with the left upper extremity; [and] frequently balance, stoop, kneel, crouch and crawl." (R. 23–24.) The ALJ's RFC determination was supported by substantial evidence.

The ALJ must evaluate the persuasiveness of each medical sources according to several factors such as: supportability, consistency, relationship with claimant, specialization, and other factors.[3] 20 C.F.R. § 404.1520c(c); *Colgan v. Kijakazi*, 22 F.4th 353, 359 n.2 (2d Cir. 2022); *Acarkan v. Saul*, No. 20-CV-02580, 2021 WL 4356018, at *1 (E.D.N.Y Sept. 24, 2021). Supportability and consistency are the most significant factors to consider and the ALJ is not required to consider the other factors in its analysis. 20 C.F.R. § 404.1520c(b)(2); *Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, at *1 (2d Cir. June 17, 2022).

The ALJ did not err in his RFC determination because he considered the limitations imposed by both severe and non-severe impairments. *See Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012) ("A[n] RFC determination must account for limitations imposed by both severe and nonsevere impairments." (citing 20 C.F.R. § 404.1545(a)(2) and 20 C.F.R. § 416.945(a)(2))). The ALJ based his RFC determination upon the record, considering all the medical opinions and evidence in the record. He opined that the medical evidence supports an

---

[3] On January 18, 2017, the Social Security Administration published a final rule that changed the protocol for evaluating medical opinion evidence. *See* Revisions to Rules Regarding the Evaluation of Medical Opinion Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (codified at 20 C.F.R. §§ 404, 416). The "new regulations apply only to claims filed on or after March 27, 2017." *Smith v. Comm'r*, 731 F. App'x 28, 30 n.1 (2d Cir. 2018). Plaintiff filed her claim on April 24, 2017, which is therefore subject to the new regulations set forth in 20 C.F.R. §§ 404.1520c and 416.920c.

RFC of light work with limitations for pushing, pulling, and reaching of the bilateral upper extremities based upon the imaging which showed osteoarthritis of the thoracic spine, degenerative joint disease, and a partial tear. (R. 26.) The ALJ noted that the opinion of Dr. Kimberlee Terry in the Disability Determination Explanation that Plaintiff did not have a severe physical impairment was not consistent with the medical evidence which showed osteoarthritis of the thoracic spine, degenerative joint disease, and a partial tear of the shoulders. (R. 27, 95.) The ALJ also remarked that the consultative examiner Dr. Thukral's opinion that Plaintiff had only mild limitations for pulling, pushing, lifting, and carrying due to bilateral shoulder pain was also not supported by the evidence and the imaging studies indicated greater limitations. (R. 27, 436.) The ALJ found that the medical source statement by Dr. Vilnits that Plaintiff had limitations to occasionally push, pull and reach were consistent with and supported by the medical evidence of osteoarthritis but that Dr. Vilnits' opinion that Plaintiff could only lift or carry up to ten pounds, stand, walk less than two hours, sit less than two hours, and frequently reach and handle, occasionally finger and constantly feel were not supported by the medical evidence including Dr. Vilnits' own neurological and physical examinations which were found to be intact on every visit. (R. 27, 556–59.) The ALJ's determination is also supported by Dr. Mesh's neurological examinations which indicated intact motor and grip strength in both upper extremities. (R. 475, 499, 503.)

The ALJ also considered Plaintiff's subjective complaints that she continues to suffer from headaches and poor balance, is only able to stand for half an hour before she needs to sit due to pain in her legs and feet, is only able to walk a block before requiring rest and uses a cane to walk and does not leave the house often and needs assistance with cooking, cleaning, and grocery shopping. (R. 25.) The ALJ determined that "the record did not support Plaintiff's

allegations of a limited ability to stand and walk." (R. 26.) The ALJ opined that the evidence supports a capacity for light work with frequent balancing, stooping, kneeling, crouching, and crawling. (R. 26.) While Dr. Mesh did note some instability in Plaintiff's gait and some weakness in the left hip flexor, there was no indication of pain when ambulating, the need for an assistive device, and Plaintiff had full range of motion. (R. 475, 499, 503.) Dr. Mesh also recommended physical therapy to assist Plaintiff with unsteadiness but Plaintiff informed Dr. Thukral in her May of 2017 consultative examination that the weakness had subsided, and that she did not require physical therapy. (R. 433.) Dr. Thukral noted in his examination that Plaintiff did not have any difficulty when walking on heels or toes which conflicts with the medical evidence from Dr. Mesh. (R. 434.) Plaintiff complained of unsteadiness to Dr. Vilnits, but she never indicated that she was suffering from lightheadedness, dizziness, weakness or required assistance with daily activities. (R. 347–48, 420–21, 427, 446–47, 463, 515, 519–20, 524–25, 530–31, 564–65, 570–71, 578–79, 582–3, 587–88.) When there is conflicting evidence about a plaintiff's pain, the ALJ is required to make a credibility determination. *Snell v. Apfel*, 177 F.3d 128, 135 (2d Cir. 1999). The ALJ determined that Plaintiff's subjective complaints were not supported by the medical evidence. The ALJ evaluated the supportability and consistency of the medical evidence and Plaintiff's subjective complaints, and his RFC determination was based on substantial evidence.

      **iv. Past relevant work**

Lastly, the ALJ opined that Plaintiff could perform her past relevant work as a bus monitor as it is performed generally. (R. 27.) Plaintiff testified that she was a bus attendant for children with special needs and would have to get off the bus and pick up the children and bring them on to the bus. (R. 48.) She would have to lift between 40–50 pounds. (R. 48.) She worked

17

four hours in the morning and three hours in the afternoon and she would be standing for about half the time. (R. 48–49.) The VE testified at the hearing that the role of bus monitor is performed between light and medium duty, and that Plaintiff performed the role at medium duty. (R. 57.) Based upon the ALJ's hypothetical question in which an individual of Plaintiff's age with her work history was restricted to light work and occasionally push and pull with bilateral extremities and occasionally reach with the left upper extremity[4] and infrequently stoop, kneel, crouch, and crawl, that individual could perform the role of bus monitor as generally performed. (R. 57–59.) In the fourth step of the ALJ's analysis it is the plaintiff's "burden to show an inability to return to her previous specific job *and* an inability to perform her past relevant work generally." *Jasinski v. Barnhart*, 341 F.3d 182, 185 (2d Cir. 2003) (citation omitted).

The ALJ's finding that Plaintiff can perform her past relevant work as it is generally performed is enough to refute a disability finding, and the Court does not need to determine whether Plaintiff can perform her past relevant work as actually performed. *See Glessing v. Comm'r of Soc. Sec. Admin*, 725 F. App'x 48, 49 (2d Cir. 2018) ("[T]he ALJ determines whether the claimant's residual functional capacity . . . would allow her to perform 'past relevant work.' If so, the claimant is not disabled." (quoting *Jasinki*, 341 F.3d at 184)); *Albano v. Colvin*, 99 F. Supp. 3d 355, 367–68 (E.D.N.Y. 2015) ("[T]he ALJ's finding that [p]laintiff could perform [her] past relevant work . . . as generally performed is sufficient to negate a finding of disability at step four[;] it is not necessary for the [c]ourt to determine whether [p]laintiff could perform her past relevant work as actually performed." (quoting *Grogg v. Comm'r of Soc. Sec.*, No. 11-CV-1381, 2014 WL 1312325, at *13 (N.D.N.Y. Mar. 31, 2014))); *see also Fiedler v. Colvin*, 54 F. Supp. 3d

---

[4] The VE noted that the role of bus monitor and office cleaner do not require reaching overhead. (R. 58.)

205, 216 (E.D.N.Y. 2014). The ALJ did not err when he did not determine if Plaintiff could perform her past relevant work as actually performed and correctly determined based upon both Plaintiff's and the VE's testimony that Plaintiff could perform her past work as generally performed.

### III. Conclusion

For the foregoing reasons, the Court grants the Commissioner's motion for judgment on the pleadings. The Clerk of Court is directed to close this case.

Dated: September 7, 2023
Brooklyn, New York

SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge